1997 SD 9

**UNITED STATES ex rel. John Yellow Bird STEELE, Plaintiff,**

v.

**TURN KEY GAMING, INC. and Wayne Barber, Defendants.**

Civ. No. 96–5113.

United States District Court,
D. South Dakota,
Western Division.

March 18, 1997.

Donald R. Shultz, Jay C. Shultz, Lynn Jackson Shultz & Lebrun, Rapid City, SD, for Plaintiff.

Ronald W. Banks, Banks, Johnson & Colbath, Rapid City, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS

BATTEY, Chief Judge.

### NATURE AND PROCEDURAL HISTORY

[¶ 1] On December 18, 1996, plaintiff filed this action as a *qui tam* [1] proceeding pursuant to 25 U.S.C. § 81. Plaintiff is an enrolled member of the Oglala Sioux Tribe ("Tribe"). Although plaintiff is the president of the Tribe, the action is brought by plaintiff individually and on relation of the United States. The Tribe is not a party to these proceedings.

[¶ 2] Plaintiff alleges that defendants entered into two agreements dated January 19, 1995, in which defendant Turn Key Gaming, Inc. ("Turn Key") agreed to provide management services for the casino known as the Prairie Wind Casino located on the Pine

---

1. *Qui tam* is an abbreviation for the Latin phrase *"qui tam pro domino rege quam pro se imposo sequitur."* The phrase literally means "who sues on behalf of the king as well as for himself." *Black's Law Dictionary* 1251 (6th ed. 1990). *See also Bass Anglers Sportsman's Soc'y v. United States Plywood–Champion Papers, Inc.,* 324 F.Supp. 302, 305 (S.D.Tex.1971).

Ridge Indian Reservation. One agreement provided that Turn Key would rent to the tribe certain facilities and equipment to be utilized by the tribe in the conduct of its Class III gaming operation. (Complaint, Exhibit A.) The second agreement was an employment agreement for the Prairie Wind Casino in which the defendant Wayne Barber ("Barber") was to become the employee of the Oglala Sioux Tribe in the operation and management of the casino. (Complaint, Exhibit B.)

[¶ 3] The essence of plaintiff's *qui tam* action is that Turn Key and Barber, in violation of 25 U.S.C. § 81, unlawfully received money from the Tribe pursuant to the agreements which had never been approved by the Secretary of Interior and Commissioner of Indian Affairs. Plaintiff seeks a recovery of $1.4 million paid under the rental agreement and in excess of $50,000 obtained by Barber under the employment agreement.

[¶ 4] Plaintiff invokes the Court's federal question jurisdiction under 28 U.S.C. § 1331.

## DISCUSSION

### [¶ 5] A.  *Qui Tam* Actions

[¶ 6] 25 U.S.C. § 81 provides as follows:

### § 81.  Contracts with Indian tribes or Indians

No agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, or to any claims growing out of, or in reference to, annuities, installments, or other moneys, claims, demands, or thing, under law or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States, unless such contract or agreement be executed and approved as follows:

First.  Such agreement shall be in writing, and a duplicate of it delivered to each party.

Second.  It shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it.

Third.  It shall contain the names of all parties in interest, their residence and occupation; and if made with a tribe, by their tribal authorities, the scope of authority and the reason for exercising that authority, shall be given specifically.

Fourth.  It shall state the time when and place where made, the particular purpose for which made, the special thing or things to be done under it, and, if for the collection of money, the basis of the claim, the source from which it is to be collected, the disposition to be made of it when collected, the amount or rate per centum of the fee in all cases; and if any contingent matter or condition constitutes a part of the contract or agreement, it shall be specifically set forth.

Fifth.  It shall have a fixed limited time to run, which shall be distinctly stated.

All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any Indian or tribe, or any one else, for or on his or their behalf, on account of such services, in excess of the amount approved by the Commissioner and Secretary for such services, may be recovered by suit in the name of the United States in any court of the United States, regardless of the amount in controversy; and one-half thereof shall be paid to the person suing for the same, and the other half shall be paid into the Treasury for the use of the Indian or tribe by or for whom it was so paid.

[¶ 7] According to the plain words of the statute, all contracts made in violation of the statute are null and void and all money or other thing of value paid by any tribe may be recovered by a suit in the name of the United States in any court of the United States regardless of the amount in controversy; and one-half thereof shall be paid to the person and the other half shall be paid into the treasury of the United States in trust for the use of the Indian tribe for whom it was so

paid. Thus, plaintiff Steele seeks payment to him individually of one-half of the amount paid by the Tribe, the other one-half to be paid to the United States. As stated, plaintiff Steele is not pursuing this action in his official capacity as president of the Oglala Sioux Tribe, but seeks a personal judgment to which he would be entitled one-half as an Indian person under section 81. Additionally, he seeks prejudgment interest, attorney's fees, accounting fees, and other appropriate and reasonable expenses to which he may be entitled.

[¶ 8] A *qui tam* action has been referred to as a "bounty hunter's" statute.[2] *United States ex rel. Mosay v. Buffalo Bros. Management, Inc.*, 20 F.3d 739 (7th Cir.1994). Plaintiff Steele is the "bounty hunter." The statute was originally enacted on May 21, 1872, ch. 117, 17 Stat. 136, now codified as 25 U.S.C. § 81. This section constitutes an independent grant of jurisdiction to the federal courts over the subject matter of the statute. The first *qui tam* statute appeared in the late 14th century in England and the Supreme Court has noted that *qui tam* has been around "ever since the foundation of our government." *See United States ex rel. Yellowtail v. Little Horn State Bank*, 828 F.Supp. 780, 783 n. 3 (D.Mont.1992) (citing *Marvin v. Trout*, 199 U.S. 212, 225, 26 S.Ct. 31, 34, 50 L.Ed. 157 (1905)).

## DEFENDANTS' MOTION TO DISMISS

[¶ 9] In addressing a motion to dismiss, a court must take all facts alleged in plaintiff's complaint as true and construe all allegations and reasonable inferences arising therefrom in the light most favorable to plaintiff. *Palmer v. Tracor, Inc.*, 856 F.2d 1131 (8th

Cir.1988). A motion to dismiss can be granted only if it appears beyond doubt that plaintiff can prove no set of facts which would entitle plaintiff to relief. *Id.* at 1132; *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).[3] The Court assumes for the purpose of resolving the motion to dismiss that the two agreements of January 19, 1995, were not approved by the Secretary of the Interior or the Commissioner of Indian Affairs. The Court notes that appended on the bottom of each agreement is the statement, "Approved pursuant to 25 U.S.C. 81 and other applicable federal statutes on the 26th day of January, 1995, by Delbert Brewer, Superintendent, Bureau of Indian Affairs, Pine Ridge Agency, Pine Ridge, South Dakota." For the purpose of deciding the motion the Court assumes, as it must, that the approval was not in compliance with the statute.

[¶ 10] In support of defendants' motion to dismiss, defendants allege that (1) the Oglala Sioux Tribe is an indispensable party which has not been joined, requiring dismissal of the case; (2) Steele lacks standing to bring a *qui tam* action; and (3) the January 19, 1995, agreements do not relate to "Indian lands," thereby requiring the necessary section 81 approval.[4]

## LACK OF STANDING

[¶ 11] Defendants invite the Court to hold that plaintiff lacks standing to pursue this action. The Court declines the invitation. The Court notes some cases have been dismissed for lack of standing One such case is *In re United States ex rel. Hall*, 825 F.Supp. 1422 (D.Minn.1993),[5] a *qui tam* action brought by members of an Indian tribe

---

2. This statute also provides a remedy for violations of the Indian Gaming Regulatory Act. *United States ex rel. Mosay v. Buffalo Bros. Management, Inc.*, 20 F.3d 739 (7th Cir.1994).

3. The Court understands that it does have discretion to convert a motion to dismiss to a motion for summary judgment under Federal Rule of Civil Procedure 56, but declines to do so in view of the fact that granting the motion to dismiss is appropriate under these circumstances.

4. The Court is not unmindful of other grounds urged in support of motion to dismiss, namely (4) the Tribe and its president are impermissibly

splitting their causes of action; (5) defendants' counterclaim should survive the *Conley v. Gibson* test, and (6) even though the agreements were not required to be approved by the Bureau of Indian Affairs, both agreements were in fact approved by Brewer's endorsement. In view of this Court's ruling, it is unnecessary to discuss these alleged grounds for relief.

5. *See also United States ex rel. Yellowtail v. Little Horn State Bank,* 828 F.Supp. 780 (D.Mont. 1992), *aff'd on other grounds,* 15 F.3d 1095 (9th Cir.1994).

against non-Indians merchants and vendors challenging validity under federal law of contracts entered into by tribes in the course of establishing and operating tribal gaming enterprises. In applying the Supreme Court's holding in *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), the district court dismissed all of the actions brought in that multiparty litigation for lack of standing. As an alternate ground for dismissal, the court held that the Indian tribes were indispensable parties under Federal Rule of Civil Procedure 19. The court held that the tribes could not involuntarily be joined due to the tribes' sovereign immunity since the Indian tribes were parties to the agreements under consideration, the court held that the tribes were therefore indispensable. The action was then dismissed.

### INDISPENSABLE PARTIES

[¶ 12] In an unpublished per curiam opinion, the Eighth Circuit affirmed the dismissal in *Hall* for failure to join indispensable parties. The opinion stated as follows:

The tribes cannot be joined involuntarily because they are entitled to sovereign immunity, and there is no indication that the immunity would be waived. We agree with the District Court that the tribes are necessary parties within the meaning of Fed.R.Civ.P. 19(a)(2)(i). They are parties to the challenged contracts, and their interest in the validity of the contracts would be directly affected by a judgment declaring the contracts void and unlawful, which is the relief sought by the plaintiffs. Under Fed.R.Civ.P. 19(b), the question then becomes "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." For the reasons given in the above opinion of the District Court, we agree with the Court that the Indian tribes are indispensable in the sense that word is used in Rule 19. It is simply inconceivable to us that a suit claiming that a contract is invalid should be allowed to proceed in the absence of all parties to the contract.

This ground—failure to join indispensable parties—is adequate to dispose of the entire case, and we affirm on that basis. It is thus not necessary for us to reach the issues of standing and of the merits that the parties have briefed. The judgment is affirmed, substantially for the reasons given in that portion of the District Court's opinion that deals with Rule 19. *See* 8th Cir. R. 47(B).

[¶ 13] The opinion of the Minnesota district court and the unpublished opinion in affirmance are the end of the story. *See also United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476 (7th Cir.1996), which dismissed the 42 *qui tam* actions originally brought in the United States District Court for the District of Minnesota. *United States ex rel. Hall v. Tribal Dev. Corp.*, 49 F.3d 1208 (7th Cir.1995); *In re United States ex rel. Hall*, 825 F.Supp. 1422 (D.Minn.1993), *aff'd*, 27 F.3d 572 (8th Cir.1994), *cert. denied*, 513 U.S. 1155, 115 S.Ct. 1112, 130 L.Ed.2d 1076 (1995).

[¶ 14] The Court notes in plaintiff's memorandum brief that plaintiff would invite this Court to discount the Eighth Circuit per curiam opinion as one not to be relied upon as precedent. The affirmance was pursuant to Eighth Circuit Rule 47(B). This Court also declines this invitation. Rule 47(B) is a rule often applied by the appellate court for the enforcement of a lower court's decision without opinion. The rule provides:

A judgment or order appealed may be affirmed or enforced without opinion if the court determines an opinion would have no precedential value and any of the following circumstances disposes of the matter submitted to the court for decision:

(1) a judgment of the district court is based on findings of fact that are not clearly erroneous.

(2) . . .

(3) . . .

(4) No error of law appears.

Indeed, the appellate court from time to time does quote from its own unpublished opinions.[6] The fact that *Hall* was affirmed in an

---

6. For example, the Court of Appeals has cited an unpublished opinion in *Jones v. Mabry,* 723 F.2d 590, 595–96 (8th Cir.1993).

unpublished opinion in no way detracts from *Hall*'s precedential value. The affirmance enhances *Hall*'s precedential authority.

[¶ 15] Plaintiff simply misperceives the effect of an unpublished opinion on *Hall* and invites the Court to adopt the ruling of *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407 (8th Cir.1995). This is the third invitation which this Court declines. *Arrow* was not a case ruling on whether the Yankton Sioux Tribe was an indispensable party. That case was one where the tribe's motion was treated as a request to intervene pursuant to Federal Rule of Civil Procedure 24. *See* Part 2, head note 1. In that case United States District Judge John Jones, District of South Dakota, denied intervention because of the tribe's failure to act in a timely fashion, so the court in its discretion refused intervention. The facts in *Arrow* differ materially from the present case. In *Arrow*, the tribe made a belated Rule 19 motion for joinder. The district court barred the motion on the basis of laches.

[¶ 16] The Tribe has not joined this action. While the Court can only speculate as to why the Tribe did not join in this case and thereby waive its sovereign immunity, there are many independent reasons why it might not wish to do so. Perhaps the Tribe was not offered the opportunity to join. In addition to simply not wishing to involve the Tribe in this litigation, the tribal council may have believed that to associate itself in a *qui tam* action may jeopardize its future ability to involve itself with other persons, both Indian and non-Indian in the management and operation of gambling casinos within the reservation. The Minnesota district court in *Hall*, 825 F.Supp. at 1429, referred to such a reason as follows:

> In a larger sense, the precedent set by rescission of transactions freely entered by the tribes would likely be extremely prejudicial to the tribes' long term interest in Indian gaming and the revenue it provides. The plaintiffs essentially seek rescission of the contracts and disgorgement of money paid for goods and services rendered pursuant to those contracts. The message such a judgment would send to outside vendors would be that transactions with Indian gaming enterprises are subject to cancellation at any time and without regard to whether the contracts were freely and fairly negotiated, the extent to which the parties have performed their duties under the contracts or the settled expectations and reliance of the parties. Very few merchants would be willing to transact business with Indian casinos under such risky conditions. This might well signal the end of Indian gaming in the Upper Midwest. Regardless of whether such a judgment would otherwise constitute the correct application of the law, it would undeniably be prejudicial to the interests of the Indian tribes.

Finally, the Tribe may simply conclude that the concept of sovereign immunity which the Tribe enjoys is much too important of a concept to waive for the purpose of this *qui tam* action.

[¶ 17] In the application of Rule 19 of the Federal Rules of Civil Procedure, there is a two-part inquiry which the Court must consider. Rule 19(a) refers to persons to be joined if feasible and Rule 19(b) provides for a determination as to whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." The factors to be considered by the Court include: First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

[¶ 18] In considering the first factor, the Court points out that this case has only been filed for a short duration (December 18, 1996). Discovery has barely begun. As stated by the appellate court in *United States ex rel. Hall*, "it is simply inconceivable ... that

a suit claiming that a contract is invalid should be allowed to proceed in the absence of all the parties to the contract." Nos. 93–2903MN, 93–3089MN, slip op. at 4, 1994 WL 320296 (8th Cir.1994). Additionally, the precedent-setting conduct of the Tribe in rescinding transactions freely entered into by the Tribe would likely be extremely prejudicial to the Tribe's long-term interest in Indian gaming and the revenue it provides. Tribal gaming operations are relatively new in this state [7] and if they are to become successful, it would be important that the tribes not rescind otherwise valid contracts which have as their mission the fostering of successful gambling operations on the state's Indian reservations.

[¶ 19] In addressing the second factor outlined in Rule 19(b), the prejudice to the Tribe cannot be lessened. If the contracts violate 25 U.S.C. § 81, they are void. If not, they fully comply with the law and are valid. *See In re United States ex rel. Hall,* 825 F.Supp. at 1431. The Court believes that both the third and fourth factors pale in importance to the first and second factors, and thereby the Court determines that since joinder is not feasible by reason of the very important concept of tribal sovereignty, the case must be dismissed.

## CONCLUSION

[¶ 20] Based upon the finding by this Court that the Oglala Sioux Tribe is an indispensable party and the equitable principles enunciated in Rule 19, do not favor a continuation of the action independent of the Tribe as an important party to the January 19, 1995, agreements, the Court dismisses the action by judgment entered herewith. The matter of the application of the federal rule of standing must await further discussion in another case at another time. It is

[¶ 21] ORDERED that defendants' motion to dismiss plaintiff's complaint is granted.

[¶ 22] IT IS FURTHER ORDERED that plaintiff's motion to dismiss defendants' counterclaim is denied as moot.

[¶ 23] IT IS FURTHER ORDERED that defendants' motion to consolidate with Civ. 96–5084 is denied as moot.

---

**7.** In 1986 the South Dakota Constitution was amended to authorize a state lottery or video games of chance. *See* S.D. Const. art. III, § 25. On March 1, 1989, South Dakota enacted a statutory scheme authorizing video lottery games which became effective July 1, 1989. *See* 1989 S.D. Sess. L. Ch. 368 (codified as amended at S.D.C.L. ch. 42–7A, including S.D.C.L. §§ 42–7A–1, –3, –4, –89, –13 through –16, –36 through –50).